UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>DANIEL RAMOS,<br><br>             Defendant. | CR. 17-50010-JLV<br><br><br>ORDER |

## INTRODUCTION

A grand jury returned an indictment alleging defendant Daniel Ramos
committed sexual abuse of a minor. (Docket 1). Defendant filed a motion to
suppress statements. (Docket 15). The suppression motion was referred to the
magistrate judge for a report and recommendation pursuant to 28 U.S.C.
§ 636(b)(1)(B) and the standing order dated March 9, 2015. Magistrate Judge
Daneta Wollmann conducted a hearing on the motion and issued a report and
recommendation concluding defendant's motion should be denied. (Dockets 34
& 38). Defendant filed objections to the report and recommendation. (Docket
42).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files
written objections to the magistrate judge's proposed findings and
recommendations, the district court is required to "make a de novo
determination of those portions of the report or specified proposed findings or
recommendations to which objection is made." Id. The court may "accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. After establishing the background facts, the court addresses defendant's objections in turn.

## FACTS

On November 3, 2016, Federal Bureau of Investigation ("FBI") Special Agent Jeffrey Youngblood ("SA Youngblood" or "the agent") interviewed defendant. (Docket 38 at p. 2). The interview occurred because SA Youngblood contacted defendant and asked him to meet. Id. The agent reached out to defendant as part of his investigation into a report that defendant engaged in a sexual act with a 15-year-old female in September 2016. Id. Defendant agreed to a meeting, suggesting it take place in the parking lot of an ice cream store in Rapid City, South Dakota. Id.

When SA Youngblood arrived in his non-marked vehicle at the parking lot, he parked next to defendant's car. Id. Defendant entered SA Youngblood's vehicle, and the agent showed his FBI credentials. Id. Within approximately 30 seconds of starting the interview, SA Youngblood stated: "Before we get started Daniel, I just need you to understand you are not under arrest, okay. I'm not going to arrest you during or after this conversation. The doors are unlocked. You are free to go anytime you want. You understand that?" Id. at p. 3; (Exhibit 1). Defendant stated he understood. (Docket 38 at p. 3). No Miranda[1] warnings were given. Id. In a general manner the agent asked whether defendant knew what they were there to discuss, and defendant

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

indicated he did know.  Id. at p. 2.  SA Youngblood notified defendant he was going to record their conversation.  Id. at p. 3.

The interview lasted approximately 10 minutes.  Id. at p. 4.  Defendant made statements about the sexual encounter the agent was investigating.  Id. SA Youngblood testified defendant comprehended the questions asked.  Id. at p. 3.  The magistrate judge concluded the "tape recorded interview establishes that Mr. Ramos was articulate and gave appropriate answers to the questions being asked of him."  Id.  The agent was armed during the interview, but it was not visible to defendant.  Id. at p. 3.  Defendant was 29 years old at the time. Id.  Defendant left the agent's vehicle when the interview ended and was not arrested until February 10, 2017.  Id. at pp. 4-5.

Defendant's medical history is extensive, and he has suffered many injuries in his life.  (Dockets 38 at p. 4 & 42 at pp. 2-3).  He submitted documentation of several serious head wounds.  (Dockets 38 at p. 4 & 42 at pp. 2-3).  In November 1994, defendant was evaluated for ADHD behaviors, his IQ testing put him in a borderline range and he received a Ritalin prescription.[2] (Dockets 29-11 at p. 1 & 42 at p. 2).  The magistrate judge determined these records did not show "whether Mr. Ramos suffered any long term effects as a result of [his] injuries."  (Docket 38 at p. 4).

---

[2]"ADHD" stands for attention deficit hyperactivity disorder and is treated by Ritalin.  "IQ" means intelligence quotient.

## DISCUSSION

### I. Custody

The magistrate judge found defendant was not in custody during his interview, so the absence of <u>Miranda</u> warnings did not violate his rights. (Docket 38 at pp. 5-8). Defendant objects to this determination. (Docket 42 at p. 4).

"The rule in *Miranda* requires that any time a person is taken into custody for questioning, a law enforcement officer must, prior to questioning, advise the individual of his right to be free from compulsory self-incrimination and his right to the assistance of counsel." <u>United States v. Axsom</u>, 289 F.3d 496, 500 (8th Cir. 2002) (citing <u>Miranda</u>, 384 U.S. at 444); <u>see also</u> <u>United States v. Laurita</u>, 821 F.3d 1020, 1023 (8th Cir. 2016) ("The rule under *Miranda* prevents the government from using statements 'stemming from custodial interrogation of the defendant,' unless the government has used 'procedural safeguards effective to secure the privilege against self-incrimination.' ") (quoting <u>Miranda</u>, 384 U.S. at 444). "Although the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>Laurita</u>, 821 F.3d at 1023-24 (internal quotation marks omitted). If a person is in custody, law enforcement must read him his <u>Miranda</u> rights; if not in custody, <u>Miranda's</u> protections do not apply. <u>See</u> <u>id.</u>

"To determine whether a suspect was in custody, [courts] ask 'whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave.'" Id. (quoting United States v. Vinton, 631 F.3d 476, 481 (8th Cir. 2011)). The United States Court of Appeals for the Eighth Circuit established six indicia of custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

These considerations confirm defendant was not in custody during his interview with SA Youngblood. The agent informed defendant he could terminate the interview at any point and he was not under arrest. (Docket 38 at p. 6). Although he was sitting in the agent's car, defendant was not "handcuffed, physically or verbally restrained, or otherwise confined[.]" Laurita, 821 F.3d at 1025. Defendant voluntarily agreed to meet with SA Youngblood. See id. ("While the investigators initiated contact with Laurita, the record fully supports the magistrate judge's finding that 'Laurita voluntarily agreed to speak with Special Agent Howley.'").

SA Youngblood did not employ deception or strong arm tactics. The agent got close when he told defendant he would not be arrested during or after the interview. (Docket 38 at p. 3). But the agent made this remark in the context of explaining that defendant could end the conversation whenever he wanted. Id. SA Youngblood immediately followed the remark with a reminder that the car doors were unlocked and defendant was free to leave. Id. Even if this was deception, it does not impact the custody analysis because it "would not have acted to prevent a reasonable person from terminating the interview and leav[ing.]" Laurita, 821 F.3d at 1026 (citing United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006)). The environment of the brief interview was not police dominated. See id. at 1026-27 (collecting cases where longer and much more intense interrogations were not police dominated). Defendant was not arrested at the conclusion of the questioning.

Under Eighth Circuit law, defendant was not in custody. See Griffin, 922 F.2d at 1347; see also Laurita, 821 F.3d at 1024-27. Consequently, the absence of Miranda warnings did not violate his constitutional rights. The court adopts the magistrate judge's report and recommendation on this issue and rejects defendant's objections.

## II. Voluntariness

The magistrate judge determined defendant's statements to SA Youngblood were voluntary. (Docket 38 at pp. 8-15). Defendant objects. (Docket 42 at pp. 5-6).

To comport with the Fifth Amendment, defendant's statements must be voluntary.  See United States v. Williams, 720 F.3d 674, 690-91 (8th Cir. 2013).  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  United States v. Boslau, 632 F.3d 422, 428-29 (8th Cir. 2011).  "A statement cannot be rendered involuntary by the incapacity of the defendant alone; there must be some coercive police activity."  United States v. Anaya, 715 F. Supp. 2d 916, 931-32 (D.S.D. 2010) (citing Colorado v. Connelly, 479 U.S. 157, 164, 167 (1986)).  In the Eighth Circuit, officers may "elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices . . . unless the overall impact of the interrogation caused the defendant's will to be overborne."  United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (internal quotation marks and citations omitted).  The court analyzes this issue based on "the totality of the circumstances," and the government "bears the burden of persuasion and must prove by a preponderance of the evidence the voluntariness of the challenged statements."  Williams, 720 F.3d at 691.

In defendant's view, "SA Youngblood made a clear promise to Mr. Ramos that he would not be arrested after the interview and, therefore, his statement was involuntary and must be suppressed."  (Docket 42 at p. 5).  This does not

persuade the court. As stated above, the agent's remark that defendant was not and would not be arrested related to the issue of whether defendant was free to terminate the questioning at any point. The interview recording establishes that a reasonable person would not view the remark as a grant of immunity, and defendant did not appear to understand it that way. "Even assuming that a reasonable person would view [the agent's] statements as a promise, a promise made by law enforcement does not render a confession involuntary per se. It is simply one factor to be considered in the totality of the circumstances." Brave Heart, 397 F.3d at 1041 (internal quotation marks and citations omitted).

Based on the totality of circumstances, the government sufficiently proved defendant's statements were voluntary. The interview in this case was merely 10 minutes; the agent and defendant were calm throughout; and defendant understood the questions and provided responsive answers. (Docket 38 at pp. 13-15). In the Eighth Circuit, the situations where a suspect's statements are not voluntary are extremely narrow. See Brave Heart, 397 F.3d at 1041 (listing the tactics law enforcement can employ without eliciting an involuntary confession). This is not one of those unique cases. Defendant's statements were voluntary. The court adopts the magistrate judge's report and recommendation on this issue and rejects defendant's objections.[3]

---

[3]Defendant's objections do not reargue the impact his medical history had on the voluntariness of his statements. But because SA Youngblood did not use coercive methods, the statement is voluntary. See Anaya, 715 F. Supp. 2d at 931-32 ("A statement cannot be rendered involuntary by the incapacity of the defendant alone; there must be some coercive police activity.") (citing

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's objections (Docket 42) to the magistrate judge's report and recommendation are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 38) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 15) is denied.

IT IS FURTHER ORDERED that a scheduling order will be entered.

Dated November 6, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

Connelly, 479 U.S. at 164, 167).  The court additionally finds the magistrate judge's conclusion that defendant's medical problems did not render his statements involuntary is a correct application of the law and a further reason the statements were voluntary.  (Docket 38 at pp. 14-15).